Chief Judge Breitel.
This is a proceeding under article 6 of the Family Court Act (§§611-634) brought by petitioner Spence-Chapin Adoption Service to terminate permanently a mother’s parental custody of her daughter. There is another related petition by the New York City Commissioner of Social Services involved on the same appeal, but it does not require separate consideration in light of the disposition.
The Family Court denied the petitions, and ordered the child returned to her mother. The court found that the agency had failed diligently to encourage and strengthen the parental relationship. The Appellate Division reversed, on the law and the facts, one Justice dissenting, and granted the petition to terminate parental custody.
The issue is whether the child was "permanently neglected” within the meaning of section 611 of the Family Court Act. Its resolution turns on whether the agency to which the child had been committed had made diligent efforts, not inconsistent with the moral and temporal welfare of the child, to encourage and strengthen the parental relationship.
There should be an affirmance. Ample evidence in the record supports a finding of permanent neglect. The mother failed substantially and continuously or repeatedly to maintain contact with or plan for the future of the child. Diligent efforts at encouraging and strengthening the parental relationship may not be made at the expense of the moral and temporal welfare of the child. The agency’s efforts were repeatedly thwarted by the mother’s intransigence, instability and abusiveness toward the child. Thus, the "best interests” of this permanently neglected child require a termination of parental custody (Family Ct Act, § 614, subd 1, par [e]; § 631 [as amd by L 1975, ch 701]; § 623).
The courts below decided the issue based upon the statute as it then read. Former section 614 (subd 1, par [e]) required that permanent termination of custody be in the "moral and temporal” interests of the child. Chapter 701 of the Laws of 1975 amended, section 614 (subd 1, par [e]) to read "best” instead of "moral and temporal” interests, and added to section 631 a requirement that an order of disposition on an adjudication of permanent neglect be made solely on the basis of the best interests of the child. This court decides the case on the basis of the law as it exists today (see Strauss v University of State of N. Y., 2 NY2d 464, 467, and cases cited). *622 The result in this case, on its facts, would be the same under either statutory standard.
The child is now almost eight years of age. She has been since infancy in the custody of first, the New York City Bureau of Child Welfare and, thereafter, the Spence-Chapin Adoption Service. Foster care was precipitated by the persistent neglect by the mother, who was, as characterized by the Appellate Division, "aggressive, paranoid and immature”. Indeed, a psychiatrist and also a psychologist, who examined the mother, described her as "schizophrenic” and recommended that the child not be returned to her mother.
Both the Bureau of Child Welfare and Spence-Chapin attempted to maintain contacts with the mother, in an effort to encourage visitation and thereby strengthen the parental relationship. Their efforts to set up visits met with little success, largely due to the failure of the mother to keep in touch with the agency. As justifiably found by the Appellate Division, the mother interspersed long periods of neglect with sudden, hysterical and raging demands for the return of her child. Her sporadic meetings with agency personnel and her child were filled with tension, and marked by her abusiveness, threats and even physical violence toward agency personnel and the child’s foster mother. There is evidence that, on at least two occasions, before the first commitment of the child, and later when the child had been abducted by the mother, the mother physically abused the child. The mother has lived at an inordinate number of addresses, when known, and the "home” conditions were filthy with frequently changing occupants, if not derelicts. As of this time, she has had three children in all.
Under these circumstances, the agency determined that further attempts to encourage the parental relationship would endanger the best interests of the child and therefore terminated the thus far vain effort to encourage constructive visitation. It therefore instituted the present proceeding.
The Appellate Division and the Family Court have disagreed in their findings of fact and in the appropriate exercise of discretion. This court has, therefore, power to review the facts and the exercise of discretion (CPLR 5501, subd [b]). Nevertheless, the case is of a kind which should be largely determined by the courts vested customarily with broad power to review the facts and to supervise the exercise of discretion by courts at nisi prius (see Matter of Darlene T, 28 NY2d 391, *623 395; Matter of Jewish Child Care Assn. of N. Y. [Sanders], 5 NY2d 222, 228; People ex rel. Portnoy v Strasser, 303 NY 539, 542; Bunim v Bunim, 298 NY 391, 393; see, generally, Cohen and Karger, Powers of the New York Court of Appeals, p 459). Only in a strained sense are there involved novel questions of law, principles of precedential significance, or the need to establish uniformity of rule among the Appellate Divisions. But even if this court were not to apply the restraint indicated, the record amply supports the determination by the Appellate Division.
Section 611 of the Family Court Act defines a "permanently neglected child” as one under 18 years of age who has been placed in the care of an authorized agency, and whose parent, although physically and financially able to do so, has failed for a period of over one year "substantially and continuously or repeatedly” to maintain contact with or plan for the future of the child. This failure must be despite the agency’s "diligent efforts” to encourage and strengthen the parental relationship, if such efforts "will not be detrimental to the moral and temporal welfare of the child” (see, also, Family Ct Act, § 614, subd 1, par [c]). Section 631 (as amd by L 1975, ch 701) conditions an order of termination of parental custody, when the ground is permanent neglect, upon a finding that the "best interests” of the child require it (for a history and analysis of the statute, see Gordon, Terminal Placements of Children and Permanent Termination of Parental Rights: The New York Permanent Neglect Statute, 46 St John’s L Rev 215).
The mother failed for more than the prescribed period of one year substantially and continuously or repeatedly to maintain contact with her child or to plan for her future. The record is replete with evidence of a pattern of neglect by the mother. Indeed, on this evidentiary issue both the Family Court and the Appellate Division are in substantial agreement. Poignant and telling of her attitude toward her daughter is the mother’s statement to the court psychiatrist to the effect that either she would regain custody of the child or she would have nothing further to do with it.
Only by sophistic analysis can it be argued that the child care agency failed in its duty to "encourage and strengthen the parental relationship” between this unfortunate child and the troubled and trouble-making mother. The mother exhibited not isolated instances of parental incapacity but a pattern *624 of intransigence, instability, and abusive conduct toward the child which, perforce, must have practically limited the agency in its efforts, if the best interests of the child were to govern the actions of parties and agencies involved (see Matter of Barbara P., 71 Misc 2d 965, 972; see, also, Gordon, op. cit., 46 St John’s L Rev 215, 238-239).
Nor is there any support for the suggestion that the agency and the courts were influenced by a bias against the "nonconforming life-style” of the parent. Any kind of combined illicit, intoxicated, and psychopathogenic "life-style”, without stable home address, is not acceptable as simply an "alternative life-style” which people in an open society are entitled to follow, and courts are required to adopt as appropriate for the rearing of a little child, obviously and frequently damaged by that life-style (but cf. Matter of Feldman v Feldman, 45 AD2d 320, 322, and especially concurring opn at p 331). And, of course, the mother’s pattern, of conduct explains better the ignoring of opportunities to visit the child than does the theory of officious, unsympathetic, and un-understanding administrators discouraging such visitation.
It is significant too that the Law Guardian for the child, a lawyer on the staff of the Legal Aid Society, has submitted a useful and thoughtful brief and argument, urging that the order of the Appellate Division be sustained. Since the child obviously cannot speak for herself, this highly competent neutral submission is reassuring.
Accordingly, the order of the Appellate Division should be affirmed, without costs.
Judges Jasen, Gabrielli, Jones, Wachtler, Fuchsberg and Cooke concur.
Order affirmed.